IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02686-WDM-MEH

WAYNE TOMLINSON,
ALICE BALLESTEROS, and
GARY MUCKELROY, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

EL PASO CORPORATION, and
EL PASO PENSION PLAN,

    Defendants.

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on a motion filed by Defendants El Paso Corporation and El Paso Pension Plan (collectively El Paso) on March 30, 2005, requesting dismissal of some or all of Plaintiffs' claims, a more definite statement of Plaintiffs' Second Claim, or an order striking Plaintiffs' jury demand. Upon review of the parties' filings, I conclude oral argument is not required. For the reasons that follow, the motion will be granted to the extent it seeks dismissal of Plaintiffs' Third Claim, and otherwise denied.

### Background[1]

This case arises out of El Paso Corporation's conversion of its pension plan from

---

[1] As is appropriate in the context of a motion to dismiss, the following facts are taken from Plaintiffs' allegations.

a final average pay formula, to a cash balance formula. Under the old plan, the amount of a retiree's monthly pension was based upon their years of credited service and a final average of salary. Under the new plan, this amount is based upon the amount of credits employees accumulate throughout their years of service. Each participating employee is given a hypothetical account, and each quarter the employee earns "pay credits" based upon a percentage of their salary, and "interest credits" based upon the yield of a five-year U.S. Treasury Bond. *See generally, Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-63 (3d Cir. 2007) (comparing and contrasting traditional defined-contribution plans, traditional defined-benefit plans, and cash balance plans).

During a transition period between January 1, 1997, and December 31, 2001, participating employees accrued benefits under both the new and old plans, and retiring employees could elect whichever option benefitted them the most. Once this transition period expired retirees could still choose either option, but the old plan was "frozen" at whatever benefits the employee had earned as of December 31, 2001.

In this putative class action,[2] Plaintiffs allege that El Paso set the initial cash balance accounts for older, longer-service employees at levels significantly below the value of their accumulated annuities under the old plan. Thus, Plaintiffs allege that the freezing of old plan accruals discriminated against older workers in violation of the Age Discrimination in Employment Act (ADEA). In addition, Plaintiffs claim that the new plan violates various provisions of the Employee Retirement Income Security Act

---

[2] Plaintiffs propose a class defined as any persons who: (1) are current or former El Paso employees; (2) participated in the pension plan on or after the January 1, 2002 date on which the plan was fully converted to a cash balance formula; and (3) will be over age 40 as of the date of judgment.

(ERISA).

## Standard of Review

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is only appropriate "when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief." Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir. 1992).  The court "must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff."  *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

1.  Statute of Limitations

It is undisputed that the Plaintiffs are required to file a charge of age discrimination with the EEOC within three hundred days of the date the alleged unlawful practice occurred, *see* 29 U.S.C. § 626(d)(2); *Cruz v. Bd. of Educ.*, 537 F. Supp. 292, 294 (D. Colo. 1982), but the parties disagree on when this limitations period began to run.  According to El Paso, this court is bound by *Raymond v. Mobil Oil Corp.*, 7 F.3d 184 (10th Cir. 1993), to find that Plaintiffs' ADEA claim accrued the date the new plan amendments were adopted — January 1, 1997.

I disagree.  In *Raymond*, the Tenth Circuit did not significantly discuss this issue, but rather adopted the reasoning from a case it found to be materially indistinguishable — *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992). *Id.* at 186.  And while *Christopher* Court found the date of accrual to be the date the new plan was announced, it did so because the announcement in that case told the employees all

they needed to know in order to maintain their claim for constructive discharge. *Christopher*, 950 F.2d at 1214-1215; *see also First Nat'l Bank & Trust Co. v. Farmland Indus., Inc.*, 3 F.3d 1366, 1369 (10th Cir. 1993) ("A limitations period begins to run from the time a cause of action first accrues, which is generally the time that a suit may first be maintained thereon."). In contrast it is not clear in this case, when Plaintiffs knew or should have known enough to maintain an ADEA claim against El Paso. Although Plaintiffs' Complaint indicates that in October of 1996, Plaintiffs received a brochure saying something about a new "cash balance" formula (Complaint, Docket No. 1, at ¶ 17), Plaintiffs claim that this brochure said nothing about a freeze in accruals under the old plan, and that until they commenced this action, they never received an actual copy of the new plan. At this stage of the case, I cannot conclude that there exists no set of facts where it would be reasonable to receive such a brochure and not inquire further. Therefore, dismissal of Plaintiffs' ADEA claim based upon time limitations would be inappropriate.

2. <u>The Bona Fide Plan Exception</u>

Next, El Paso argues that Plaintiffs' ADEA claim is barred because their plan is exempt from suit as a bona fide plan under 29 U.S.C. § 623(f). This subsection makes it permissible for employers:

> to observe the terms of a bona fide employee benefit plan — (i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under [ 29 C.F.R. § 1625.10].

*Id.*³  According to El Paso, paragraph 23 of the Complaint establishes that the new plan meets the "cost incurred" prong of this test, since it clearly indicates that older workers actually receive higher pay credits than younger employees do.  El Paso does not, however, cite any caselaw indicating that a cash balance formula like the one implemented here is immune from suit as a bona fide plan.  And, it is far from clear that the hypothetical payments made to older employees' cash balance accounts (or "pay credits" attributed to these accounts) should qualify as a "cost incurred" under § 623(f), especially if the company knows that the vast majority of older workers will never cash in these "payments" but will rather elect the (now-frozen) benefits they had earned under the old plan.  Therefore, I conclude that El Paso has failed to demonstrate entitlement to relief, and its motion will therefore be denied as to this issue.

3.    Plaintiffs' Claim that Cash Balance Plans Violate ERISA (Claim Three)

Under El Paso's cash balance plan, as with all cash balance plans, if a younger worker is given the same amount of interest credits as an older worker, the younger worker will, by the time she reaches normal retirement age, have realized a greater benefit from her interest credits than the older worker did by the time he reached normal retirement age (sometime earlier).  According to Plaintiffs, this aspect of El Paso's cash balance plan violates ERISA.  Specifically, Plaintiffs' point to 29 U.S.C. § 1054(b)(1)(H), which provides that plans do not comply with ERISA "if, under the plan,

---

³ 29 C.F.R. § 1625.10 in turn provides that plans will be considered compliant with § 623(f)(2) if "the actual amount of payment made, or cost incurred, in behalf of an older worker is equal to that made or incurred in behalf of a younger worker, even though the older worker may thereby receive a lesser amount of benefits or insurance coverage."

an employee's benefit accrual is ceased, or the *rate of an employee's benefit accrual* is reduced, because of the attainment of any age." (emphasis added)  In response, El Paso argues that Plaintiffs' Claim should be dismissed because it is entirely dependant upon a faulty interpretation of § 1054(b)(1)(H).

There has been a great deal of litigation over the meaning of the words "rate of . . . benefit accrual" in the context of cash balance plans, and the courts do not always agree.  The majority have held that the phrase refers to what an employer puts into a participants account.  Under this interpretation, so long as an employer gives older employees at least as many interest credits as it does a younger employee, § 1054(b)(1)(H) is not violated, and the disparity that Plaintiffs complain of is simply the unsurprising result of the time-value of money.  *See Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007); *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636 (7th Cir. 2006); *Drutis v. Quebecor World (USA), Inc.*, 459 F. Supp. 2d 580 (E.D. Ky. 2006); *Laurent v. PriceWaterhouseCoopers LLP*, 448 F. Supp. 2d 537 (S.D.N.Y. 2006); *Hirt v. Equitable Ret. Plan for Employees, Managers & Agents*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006); *Register v. PNC Fin. Servs. Group, Inc.*, No. 04-CV-6097, 2005 WL 3120268, (E.D. Pa. Nov. 21, 2005); *Tootle v. ARINC, Inc.*, 222 F.R.D. 88 (D. Md. 2004); *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812 (S.D. Ind. 2000).  Under the minority interpretation, however, "rate of . . . benefit accrual" is equivalent to "accrued benefit" — a term defined in § 1002(23)(A) as an amount "expressed in the form of an annual benefit commencing at normal retirement age," and the disparity described above constitutes a violation of § 1054(b)(1)(H).  *See  Parsons v. AT&T Pension Benefit Plan*, No.

3:06CV552 (JCH), 2006 WL 3826694 (D. Conn. Dec. 26, 2006) (slip op.); *In re Citigroup Pension Plan ERISA Litig.*, — F. Supp. 2d — , 2006 WL 3613691 (S.D.N.Y. Dec.12, 2006); *In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d 479 (S.D.N.Y. 2006); *Richards v. FleetBoston Fin. Corp.*, 427 F. Supp. 2d 150 (D. Conn. 2006); *Cooper v. IBM Pers. Pension Plan*, 274 F. Supp. 2d 1010 (S.D. Ill. 2003) (abrogated by *Cooper*, 457 F.3d at 636).[4]

Having thoroughly considered the alternatives, I am convinced by those courts that have adopted the majority interpretation. In particular, I agree with the Third and Seventh Circuits that the minority interpretation results in an untenable discrepancy, making it permissible for a younger employee in a defined-contribution plan to benefit from the time-value of money, while making it illegal for a younger employee in a cash balance plan to do the same. *See Register*, 477 F.3d at 69; *Cooper*, 457 F.3d at 638; *see also Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."). Therefore, Plaintiffs' Third Claim will be dismissed.

4.   El Paso's Motion for a More Definite Statement

Next, El Paso argues that Plaintiffs' Second Claim is so vague and unintelligible that it cannot reasonably be expected to respond absent an order for a more definite statement. An order for a more definite statement is only appropriate when the complaint "is so vague or ambiguous that a party cannot reasonably be required to

---

[4] Due to the developing nature of the caselaw regarding this issue, both parties have submitted multiple supplements to their original briefs, and have filed multiple motions for leave to do so. In considering this issue, I have considered each of these supplements, and the motions for leave will therefore all be granted.

frame a responsive pleading." Fed. R. Civ. P. 12(e). In this case, I agree with Plaintiffs that El Paso's six-page brief on this issue demonstrates that it is fully capable of framing a response to Claim Two, and a more definite statement is therefore unnecessary.

5.   The Pension Plan as a Party

El Paso further argues that Plaintiffs have failed to make any cognizable claims against the Pension Plan itself, and that the Plan should therefore be dismissed. I disagree. Although Plaintiffs' Complaint could be more precise in identifying which claims are brought against which defendants, it is clear that Plaintiffs seek a declaration that the Pension Plan itself violates various ERISA provisions. Accordingly, it makes sense to name the Plan as a defendant, as is a common practice in this type of litigation. *See e.g.*, *Register*, 477 F.3d at 56 (naming the plan as a defendant); *Cooper*, 457 F.3d at 636 (same).

6.   Exhaustion of Administrative Remedies

In addition, El Paso argues that Plaintiffs' Complaint should be dismissed because Plaintiffs failed to exhaust their administrative remedies prior to bringing this lawsuit. In *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990), the Tenth Circuit held that "exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief [regarding ERISA claims]." However, the Court additionally held that a claim under 29 U.S.C. § 1140[5] was an exception to this rule. *Id.* at 1205.

---

[5] § 1140 generally prohibits punishing an employee for the purpose of interfering with the attainment of any benefit.

8

In this case, the parties dispute the scope of the exhaustion requirement delineated in *Held*. According to Plaintiffs, the exhaustion requirement only applies when "a plaintiff [is] alleging a statutory violation as opposed to a mere denial of benefits." *Id.* at 1204 (appearing to approve of such a holding in *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1994)). According to El Paso, however, the exhaustion requirement also applies whenever a statutory claim is "'so closely intertwined with a serious issue requiring interpretation of a benefit plan that a trial court could properly stay the statutory action pending resolution of the issue by the plan fiduciaries.'" *Id.* at 1205 (quoting with apparent approval from *Zipf v. Am. Tel. & Tel.*, 799 F.2d 889, 894 n.6 (3d Cir. 1986)).

Even if I accept El Paso's interpretation, however, I still find that it has not demonstrated entitlement to relief. Although El Paso argues in perfunctory fashion that "Plaintiffs' claims are predicated, at least in part, on non-statutory claims" (Defs.' Motion, Docket No. 10, at 37 n.12), El Paso makes no effort to explain how this is so, and it also fails to develop an argument as to why this case involves a serious issue requiring interpretation of a benefit plan. El Paso's motion to dismiss will therefore be denied on this issue.

7.      El Paso's Motion to Strike Plaintiffs' Jury Demand

Finally, El Paso moves to strike Plaintiffs' jury demand. El Paso concedes, however, that this request is entirely dependant upon dismissal of Plaintiffs' ADEA claim. As discussed above, I find that dismissal of the ADEA claim is inappropriate, and I will therefore deny El Paso's motion to strike as well.

Accordingly, it is ordered:

1. Defendants' motion for leave to file a response brief, filed November 15, 2006 (Docket No. 86), is granted and the attached brief has been considered in ruling on Defendants' motion to dismiss Claim Three.

2. Defendants' motion for leave to file a reply brief, filed November 16, 2006 (Docket No. 87), is granted and the attached brief has been considered in ruling on Defendants' motion to dismiss Claim Three.

3. Defendants' motion for leave to file a response brief, filed December 20, 2006 (Docket No. 93), is granted and the attached brief has been considered in ruling on Defendants' motion to dismiss Claim Three.

4. The motion filed by Defendants on March 30, 2005 (Docket No. 10), requesting dismissal of some or all of Plaintiffs' claims, a more definite statement of Plaintiffs' Second Claim, and an order striking Plaintiffs' jury demand, is granted to the extent it seeks dismissal of Plaintiffs' Third Claim, and is otherwise denied.

5. This case remains pending for trial on Plaintiffs' First, Second, Fourth, and Fifth Claims.

DATED at Denver, Colorado, on March 22, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge