IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02686-WDM-MEH

WAYNE TOMLINSON,
ALICE BALLESTEROS, and
GARY MUCKELROY, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

EL PASO CORPORATION, and
EL PASO PENSION PLAN,

      Defendants.

---

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND
MOTION FOR CLASS ACTION CERTIFICATION**

---

Miller, J.

      This matter is before me on Defendants' Motion for Judgment on the Pleadings
Pursuant to Federal Rule of Civil Procedure 12(c) (doc no 128), Plaintiffs' Motion to
Certify Class and Conditional Approval of ADEA Collective Action (doc no 107),
Defendants' Motion to File the Declaration of Kevin Minor (doc no 130), and
Defendants' Motion to Strike New Arguments Raised in Plaintiffs' Reply (doc no 141).
Defendants El Paso Corporation and El Paso Pension Plan (collectively "El Paso")
seek dismissal of Plaintiffs' remaining claims under the Employee Retirement Income
Security Act ("ERISA"), leaving pending Plaintiffs' claim under the Age Discrimination in
Employment Act ("ADEA").  Plaintiffs seek class certification on their ERISA claims and
conditional approval of an ADEA collective action.  Upon review of the parties' filings
and supplemental authority, I conclude oral argument is not required.  For the reasons

that follow, Defendants' Motion for Judgment on the Pleadings will be granted in part. Plaintiffs' Motion to Certify Class is granted in part and denied in part without prejudice.

<u>Background</u>[1]

This case arises out of El Paso Corporation's conversion of its defined benefit pension plan, in particular one based on a final average pay formula to one based on a cash balance formula. Under the old plan, the amount of a retiree's monthly pension was based upon their years of credited service and a final average of salary. Under the amended plan, this amount is based upon the amount of credits employees accumulate throughout their years of service. Each participating employee is given a hypothetical account, and each quarter the employee earns "pay credits" based upon a percentage of their salary, and "interest credits" based upon the yield of a five-year U.S. Treasury Bond. *See generally, Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-63 (3d Cir. 2007) (comparing and contrasting traditional defined-contribution plans, traditional defined-benefit plans, and cash balance plans).

During a transition period between January 1, 1997, and December 31, 2001, participating employees accrued benefits under both the new and old plans, and retiring employees could elect whichever option benefitted them the most. Once this transition period expired retirees could still choose either option, but the old average pay plan was "frozen" at whatever benefits the employee had earned as of December 31, 2001. Benefits would continue to accrue under the new cash balance formula.

---

[1] A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is subject to the same standard as a motion to dismiss pursuant to 12(b)(6). *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). Accordingly, the following facts are taken from Plaintiffs' allegations and referenced documents.

In this putative class action, Plaintiffs allege that El Paso set the initial cash balance accounts for older, longer-service employees at levels significantly below the value of their accumulated annuities under the old plan. One effect of the transition was that for some workers, overall benefits did not grow until the cash balance benefits caught up to and exceeded the "frozen" benefits due under the old formula. This period is commonly referred to as a "wear away."

Participants were notified of the changes to the plan in October 1996 by way of a letter and brochure. These documents informed participants that the amendments to the plan would take effect January 1, 1997, explained the mechanics of the cash balance approach and the five-year transition period, and gave examples of benefit accruals. In addition, a Summary Plan Description ("SPD") was distributed to employees in August 2002. Plaintiff Wayne Tomlinson filed a charge of discrimination with the EEOC on July 16, 2004.

Plaintiffs' first claim for relief is based on their allegation that the freezing of old plan accruals discriminated against older workers in violation of the Age Discrimination in Employment Act (ADEA). Plaintiffs also assert the following claims under ERISA: Violation of ERISA sections 203(a) and 204(b)(1)(B) (Claim II); Inadequate notice of amendment in violation of ERISA section 204(h) (Claim IV); Inadequate summary plan descriptions (Claim V). I dismissed Plaintiffs' third claim, that the cash balance plan violated ERISA, on March 22, 2007 (doc no 108) based on arguments and authorities in a Motion to Dismiss filed by Defendants.

<u>Standard of Review</u>

In considering a motion under Fed. R. Civ. P. 12(b)(6), which is the standard I apply here, I "must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff." *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996). A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

<u>Discussion</u>

1.      <u>Motion for Judgment on the Pleadings</u>

I will address at the outset Plaintiffs' contention that I should not entertain this motion because it is successive of Defendants' previously-filed Motion to Dismiss. Plaintiffs have pointed me to no authority indicating that a party cannot file a motion under Rule 12(c) after previously filing a motion under Rule 12(b)(6). Moreover, Defendants' previous motion did not address the merits of Claims II, IV, and V, as their pending Rule 12(c) motion does. Rather, in the Motion to Dismiss, Defendants sought a more definite statement on Claim II and generally asserted an exhaustion defense on all the ERISA claims. Accordingly, I disagree with Plaintiffs that the motion is successive and will consider the motion and arguments contained therein.

A.      <u>Claim II - Anti-backloading and Forfeiture</u>

Claim II of the complaint alleges two separate violations of ERISA based on the "wear away" period, where for some participants benefits under old plan are frozen and

benefits under the new plan accrue but do not yet exceed the benefit level of the old plan. Plaintiffs claim that this effect violates one of three of ERISA's "anti-backloading" provisions, specifically the "133 1/3% rule" set forth in 29 U.S.C. § 1054(b)(1)(B). In addition, Plaintiffs contend that this effect works a forfeiture if a participant retires during the wear away period, in violation of 29 U.S.C. § 1053.

As explained in *Register v. PNC Fin. Servs. Group, Inc.*, the purpose of the anti-backloading provision is

> . . . to "prevent an employer from avoiding the vesting requirements through minimal accrual of benefits in early years of employment, followed by larger benefit accruals as an employee nears retirement." *Hoover v. Cumberland, Md. Area Teamsters Pension Fund*, 756 F.2d 977, 982 n. 10 (3d Cir.1985). Congress intended by the anti-backloading provision to prohibit an employer from "providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and ... concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement." *Langman v. Laub*, 328 F.3d 68, 71 (2d Cir.2003) (quoting H.R. REP. NO. 93-807, at 4688 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4688).

477 F.3d at 71.

The parties agree that the only provision at issue here is the 133 1/3% rule under 29 U.S.C. § 1054(b)(1) (two other formulas are included in the statute but do not apply here). The applicable provision sets forth that a defined benefit plan, such as the cash balance plan here, complies with the anti-backloading rules "if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any

later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year." 29 U.S.C. § 1054(b)(1)(B). This has been interpreted to mean that ERISA "requires that the value of the benefit accrued in any year may not exceed the value of a benefit accrued in any previous year by more than 33%." *Esden v. Bank of Boston*, 229 F.3d 154, 167 n. 18 (2d Cir. 2000). However, "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years . . . ." 29 U.S.C. § 1054(b)(1)(B)(i).

Plaintiffs contend that the amended plan violates the 133 1/3% rule "because (1) the annual rates of cash balance accruals for 2002, 2003, 2004 and succeeding years are only nominal bookkeeping entries that are not actually payable in many circumstances, (2) the annual rates of accrual in 'later plan years' exceed 133 1/3% of the accruals in the current and subsequent plan years, and (3) the annual rates of accrual for older, longer-service employees are only nominal whereas the rates of accrual for younger and newly-hired employees are always payable." Complaint ¶ 45. However, as Defendants demonstrate in their motion, every court that has considered the issue has rejected Plaintiffs' argument on the grounds that when a plan is amended, only the new plan is considered in the analysis.

Most pertinent to my conclusion is the decision in *Register,* which is factually similar to this case. There, the defendant had converted its pension plan from a traditional defined benefit plan to a cash balance plan. 477 F.3d at 60. Early retirement benefits of the old plan were frozen and participants were given the option of

either receiving the accrued (but frozen) early retirement benefits or the benefit they would have accrued under the cash balance plan, whichever was higher. *Id.* A similar wear away period occurred because participants who chose to retain the accrued benefits under the old plan did not receive additional benefit accruals until the cash balance plan benefit caught up to the old plan benefit. *Id.* at 61. The court rejected plaintiffs' argument that the wear away period violated the 133 1/3% rule. First, the court noted that the argument essentially required using the two separate formulas to determine the "value of benefits accrued": first, the prior plan formula to determine previous accrued benefits and second, the cash balance formula once the account exceeds the benefits under the prior plan. *Id.* at 71. The court rejected this approach because of 29 U.S.C. § 1054(b)(1)(B)(I), which states that, for the purposes of the 133 1/3% rule, an amendment to the plan is treated as in effect for other years. "Thus, once there is an amendment to the prior plan, only the new formula is relevant when ascertaining if the plan satisfies the 133 1/3% test." *Id.* at 72. Accordingly, the wear away effect does not violate the anti-backloading rules. *Id.* I am persuaded by the analysis of the *Register* court and conclude that Plaintiffs cannot state a claim for violation of ERISA's anti-backloading provisions. *See also Finley v. Dun & Bradstreet Corp.*, 471 F. Supp. 2d 485, 494-95 (D. N.J. 2007); *Richards v. FleetBoston Fin. Corp.*, 427 F. Supp. 2d 150, 170-71 (D. Conn. 2006).

Plaintiffs argue that the *Register* and other similar decisions are in error because they do not take into account 26 C.F.R. § 1.411(b)-1(a), which states that a defined benefit plan in which accrued benefits for all participants are determined under more

than one plan formula "must be aggregated in order to determine whether or not the accrued benefits under the plan for participants satisfy one of the alternative [anti-backloading] methods." The *Register* court, however, did consider this regulation and determined that it applied to a situation where there were two or more co-existing formulas under a single plan, but not to plan amendments to a single formula. 477 F.3d at 71-72; *accord Wheeler v. Pension Value Plan for Employees of the Boeing Co.,* Case No. 06-cv-500-DRH, 2007 WL 2608875 at *12 (S.D. Ill. Sept. 6, 2007) ("A participant in the Plan does not receive an accrued benefit calculated under two co-existing formulas. Rather, a Plan participant receives a benefit under one of two separate and mutually exclusive formulas set out in the Plan . . . .").

I agree that section 1.411(b)-1(a) does not require considering the two alternative formulas here as a hybrid when testing the plan for backloading. I find particularly persuasive the thorough and well-researched analysis in *Wheeler*. Examining the examples provided in the regulations and other authority, the court there determined that this regulation applies "when a participant's accrued benefit under a plan is calculated using a sequence of formulas over time," which could then have the effect of providing higher rates of benefit accrual for participants near retirement, even if each individual formula might comply with the statute's provisions. *Wheeler* at *8-*10. Similarly, as both the *Wheeler and Register* courts noted, conversions from defined benefit to cash balance pension plans and the resulting wear away effects simply do not implicate the objective of the anti-backloading provisions, which are to prevent a plan "from being unfairly weighted against shorter-term employees." *Register*, 477 F.3d

at 72; *Wheeler*, 2007 WL 2608875 at *13 ("Moreover, the accrual rates at issue clearly are not tied to distinctions of age and service intended to favor older employees and to coerce employees into remaining in service until retirement age.") Here, Plaintiffs have the opposite concern – i.e., that younger employees or employees with less service effectively obtain a higher benefit accrual rate than older, longer-service employees during the *de facto* freeze of the older employees' accruals.

Plaintiffs disagree and point to an IRS publication, which they assert supports their position that a plan containing a "greater of" accrual formula may violate the 133 1/3% rule. None of the informal authority provided by Plaintiffs persuades me that section § 1.411(b)-1(a) applies to these circumstances and I am not persuaded by the additional and supplemental authority provided by Plaintiff, including the February 1, 2008 Internal Revenue Service Revenue Ruling 2008-7 (Rev. Rul. 2008-7). Accordingly, this claim should be dismissed.

Although Defendants did not raise the second part of Claim II (nonforfeiture rules) in the Motion, Plaintiffs discuss it in their response and so I consider that part of claim to be at issue. I conclude that Plaintiffs have not stated a claim for violation of ERISA section 203(a). This provision requires that "each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). ERISA defines a "nonforfeitable" pension benefit or right as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally

enforceable against the plan." 29 U.S.C. § 1002(19). Related regulations provide that "a right which, at a particular time, is conditioned under the plan upon a subsequent event, subsequent performance, or subsequent forbearance which will cause the loss of such right is a forfeitable right at that time." 26 C.F.R. 1.411(a)-4(a). Plaintiffs contend that "[i]f a participant elects to receive the benefits he or she earned in plan years before January 1, 2002, he or she loses the right to payment of the cash balance accruals earned in the years after that date." Plaintiffs' Opposition Brief at 11. Thus, according to Plaintiffs, "the right to receipt of cash balance accruals is conditioned on foregoing receipt of previously-earned benefits in annuity form." *Id.*

Plaintiffs have not stated a claim of forfeiture. As noted by the United States Supreme Court, "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.' " *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 371 (1980). Plaintiffs have an unconditional right to claim the maximum benefits available under the plan. The "forebearance" they describe appears to be simply the normal effect of retirement – i.e., that accruals cease and the retirement benefits themselves are paid out. Accordingly, Plaintiffs' claim fails.

B.    Claim IV - Adequacy of Notice

Claim IV must also be dismissed. According to the complaint, the plan amendment reduced the rate of future benefit accrual and Defendants were therefore required under ERISA § 204(h) to give participants written notice of the reduction at least 15 days before the effective date of the amendment. 29 U.S.C. § 1054(h)(1)(A). Defendants contend that the letter and brochure sent in 1996 satisfied the requirements

of the regulations then existing concerning the content of such notice, including that the notice be written, set forth the amendment (or a summary thereof), and set forth the amendment's effective date.  26 C.F.R. § 1411(d)-6T(1996).  Moreover, the regulation expressly did not require the plan to "explain how much the individual benefit of each participant . . . will be affected by the amendment."  *Id.*  I agree with Defendants that the 1996 letter and brochure satisfied the requirements of the regulation in force at the time.

In response, Plaintiffs contend that the plan amendment did not become effective until after the transition period (i.e., December 31, 2001), and that therefore the more stringent regulations in force in 2002 should apply.  This argument is unpersuasive.  All documentation relating to the plan unambiguously demonstrates that the amendment was effective January 1, 1997, and Plaintiffs even alleged this in their complaint.  Plaintiffs have provided no authority to support their argument that the plan changes took effect on December 31, 2001.  Plaintiffs also argue that the letter and brochure did not constitute a section 204(h) notice because they were not so labeled and because Defendants later issued another notice specifically identified as a 204(h) notice.  This is also unavailing.  Plaintiffs have provided no legal authority establishing that a notice under section 204(h) had to identify the applicable ERISA provision in order for the notice to be effective, or that no more than one notice could be issued.

Finally, Plaintiffs contend that even if the 1996 regulations are applied, the letter and brochure were inadequate because they did not give participants notice about wear-aways or benefit reductions.  The cases cited by Plaintiff in support of this

argument are distinguishable or simply do not address Plaintiff's contention. The plan at issue in *In re J.P. Morgan Chase Cash Balance Litigation* was amended in 2002 and replaced several predecessor plans after corporate acquisitions and restructuring; the court did not even examine the question of which regulations applied and whether the notice complied with earlier content requirements. 460 F.Supp.2d 479, 491 (S.D.N.Y. 2006) (refusing to dismiss plaintiffs' section 204(h) claim). In *Richards v. FleetBoston,* the court refused to dismiss the plaintiff's notice claim because defendants could not show that the purportedly compliant notice was provided to employees at least 15 days before the effective date of the change. 427 F.Supp.2d at 172. There is no allegation here that the 1996 letter and brochure were untimely.

In addition, *In re Citigroup Pension Plan ERISA Litigation* concerns a plan amendment that used a formula that violated numerous ERISA provisions, including anti-backloading, and the notice at issue did not disclose the plan's "unorthodox approach to calculating benefits and monitoring accrual rates." 470 F.Supp.2d 323, 339 (S.D.N.Y. 2006). It does not stand for the proposition that all wear away and benefit accrual reduction effects had to be disclosed in a section 204(h) notice.

Rather, I again conclude that the most pertinent authority is *Register*, which also applied the old regulations to a claim of defective notice. There, as here, the plaintiffs claimed that the notice of the plan conversion to a cash balance formula violated the section 204(h) because it failed to explain to participants that the new formula would reduce the rate of future benefit accruals for some employees. The court rejected this argument on the grounds that the applicable regulations did not require the notice to

discuss how individual benefits would be affected by the amendment. 477 F.3d at 72-73. My reading of the relevant regulations is consistent with this view. Since the 1996 letter and brochure were adequate under the law at the time, Plaintiffs' Claim IV fails as a matter of law.

    C.    <u>Claim V - Summary Plan Description</u>

Plaintiffs claim that Defendants violated 29 U.S.C. § 1022, which requires that a summary plan description ("SPD") be distributed to all plan participants and that the SPD be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Plaintiffs contend that the SPD did not disclose that the amended plan "(a) cause[d] older participants to earn no additional benefits beyond those already earned; (b) significantly reduce[d] the rate of future benefit accruals; and (c) change[d] the basis for benefits to year-by-year salary, whereas the 'old' formula based all benefits on compensation a highest pay base averaging period." Complaint ¶ 56. In addition, Plaintiffs allege that the SPD did not offer comparisons of benefits under the old and new formula that would have shown disadvantages of the new plan. Complaint ¶ 57. Plaintiffs also allege that the SPD is not written in a manner calculated to be understood by the average plan participant and does not sufficiently apprise participants of the rights and obligations. Complaint ¶ 57. Finally, Plaintiffs contend that the failure to disclose the disadvantages of the new plan violated the fiduciary duty under 29 U.S.C. § 1104(a)(1). Defendants move for dismissal of this claim on the grounds that the applicable statute and regulations do not require this information to be

disclosed.

Among the specific requirements of section 1022 is that participants be informed of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). This issue, then, reduces to the question of whether "loss" includes the possibility of a wear away effect or that future benefits under an amended plan will be less generous than they were under the previous formula. The regulations for this section appear to imply that such information might need to be disclosed, as they provide that "[a]ny description of exception, limitations, *reductions*, and other restrictions of plan benefits shall not be minimized, rendered obscure, or otherwise made to appear unimportant." 29 C.F.R. § 2520.102-2(b) (emphasis added). The parties have not provided any other case law that sheds light on this issue. Accordingly, I cannot conclude based on the pleadings alone whether the SPD violated section 1022. However, as discussed further below, the mere technical violation of section 1022 does not necessarily entitle Plaintiffs to any substantive relief.

2.      Motion for Class Certification

Plaintiffs filed a motion seeking class certification for all of their claims. Plaintiffs propose a class defined as any persons who: (1) are current or former El Paso employees; (2) participated in the pension plan on or after the January 1, 2002 date on which the plan was fully converted to a cash balance formula; and (3) will be over age 40 as of the date of judgment. Complaint ¶ 10. As a result of my ruling on Defendants' Motion to Dismiss and my conclusions above, only two claims remain pending: Claim I, alleging that the wear away period violates the ADEA, and Claim V, alleging that the

SPD violates ERISA section 102 (29 U.S.C. § 1022).  Both claims primarily concern the wear away period and other effects of the transition from the previous benefits calculation formula to the cash balance formula on certain participants' benefits.  On the condition that Plaintiffs submit a notice containing an amended class definition consistent with my discussion below, I will grant their motion in part.

I will first address Plaintiffs' request for conditional approval of an ADEA collective action.  Plaintiffs' only remaining ADEA claim concerns the wear away effect, whereby the benefits of some participants did not increase until the value of their calculated benefits under the cash balance formula exceeded their frozen benefits under the old formula.  Accordingly, the only participants who could possibly have claims similar to Plaintiffs' are persons who were participants in the plan before December 31, 1996.  Plaintiffs' class definition is far too broad to be workable for this claim, as it potentially includes numerous individuals who never received benefits under the old formula or who experienced no or minimal wear away.  Plaintiffs, in their reply brief, propose to change the class definition as follows:

> any and all persons who (1) are current or former El Paso employees; (2) participated in the pension plan before January 1, 1997 and on or after the January 1, 2002 date on which the plan was fully converted to a cash balance formula [with appropriate changes for employees of companies acquired by El Paso after the amendment]; and (3) will be over age 40 as of the court approval.

This definition is still too broad, as it does not necessarily limit the class to individuals whose benefits were subject to a wear away period.  Nonetheless, since Plaintiffs can remedy this without difficulty, I will address Plaintiffs' motion on the assumption that the

above proposed definition will be amended to limit the class to individuals whose benefits under the cash balance formula on or after January 1, 2002 were less than their benefits calculated under the old formula, thus resulting in a *de facto* benefits freeze.

Class actions under the ADEA are authorized by 29 U.S.C. § 626(b), which provides for a class action where complaining employees are "similarly situated." Unlike class actions under Rule 23, a class member must "opt in" to the class by giving consent in writing, which must be filed in the court. *Id.* Approval of an ADEA class action is often completed in two steps: first, a court makes a initial "notice stage" determination of whether plaintiffs are similarly situated. *Thiessen v. General Elec. Capital Corp.,* 267 F.3d 1095, 1003 (10th Cir. 2001). This determination generally "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* (citations and internal punctuation omitted). At the conclusion of discovery, the court then makes a second determination, utilizing a stricter standard and examining factual distinctions among the class members, and often incorporating the requirements of Rule 23. *Id.* at 1102-03.

Plaintiffs have adequately pleaded a claim that could qualify as a collective action, since the proposed class members (as amended) were similarly affected by the same amendment to the pension plan. Defendants object to the conditional approval of the collective action on the grounds that Plaintiffs have not shown that all members of the proposed class could have filed a timely charge of discrimination with the EEOC at the time that Plaintiff Tomlinson filed his charge. I conclude this is not an adequate

basis to deny conditional approval of the class, as this issue is more appropriately examined in the second stage of the certification, where the individual circumstances of the other plaintiffs opting in are examined. *See Thiessen*, 267 F.3d at 1102 (in second stage analysis, court reviews "whether plaintiffs made the filings required by the ADEA before instituting suit.")

However, I decline to issue and approve the proposed notices and consent forms at this time. I did not dismiss Plaintiffs' ADEA claim under Rule 12(b)(6) because there were clearly factual issues regarding when the wear away effect was known or should have been known by Plaintiffs. Nevertheless, the issue remains whether Plaintiff Tomlinson's charge of discrimination was timely filed and this question should be resolved before the expense and additional discovery occasioned by a collective action are incurred. It appears that discovery has been ongoing in the interval since these motions were filed. Accordingly, I request that Defendants file a summary judgment motion and brief limited to the ADEA statute of limitations issue on or before April 14, 2008. Plaintiffs may file a response brief on or before April 28, 2008. No reply brief will be permitted. In the event I determine that the charge was timely filed or that there are genuine issues of fact about the timeliness, Plaintiffs may resubmit the ADEA collective action notices and consent forms for my approval.

Plaintiffs also seek class certification on their ERISA claims. However, since only Claim V is pending at this time, I question the utility of a class action on this single claim. As I read the complaint, Plaintiffs seek as relief for this claim only a declaration that the SPD did not comply with section 1022, which binds El Paso whether or not the

claim is litigated individually or in a class action. Tenth Circuit law establishes that in the absence of reliance or prejudice flowing from a faulty plan description, Plaintiffs are not entitled to substantive relief. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996). It appears from the allegations in the complaint that any prejudice to Plaintiffs arises from the benefits freeze and reduction of expected future benefits, not from any lack of notice. Moreover, as discussed further below, Plaintiffs did not assert, and effectively disclaimed, any claim for benefits under the plan but rather assert only statutory claims. Accordingly, I will deny the motion for class certification on Claim V without prejudice to Plaintiffs' refiling their motion to show how a class action would be appropriate.

3.    <u>Defendants' Motion to File the Declaration of Kevin Minor</u>

Defendants move for leave to file a supplemental affidavit in support of their opposition to the motion for class certification. Plaintiffs oppose the motion on the grounds that the affidavit and information contained therein could have been submitted with the original brief.

The affidavit is from Kevin Minor, an employee of Mercer Human Resource Consulting, which serves as Defendants' actuary in connection with the pension plan. The affidavit addresses hypothetical members of the class, as originally defined in Plaintiffs' complaint, to show how many of them would or would not experience a wear away effect in their pension benefit accruals.

I will deny the motion as moot. Because of the dismissal of several claims and because Plaintiffs conceded their class description was overly broad, the calculations

offered in the affidavit do not add anything of substance to my analysis on the class certification issues.

4.    Defendants' Motion to Strike New Arguments Raised in Plaintiffs' Reply

Finally, Defendants seek to strike the "new" arguments made in Plaintiffs' reply brief in support of their motion for class certification.  Defendants argue that in the reply brief, Plaintiffs essentially sought to amend their class definition, which they should not be permitted to do in a reply.  Plaintiffs' proposed amendment results from Plaintiffs' concession that their class definition was overbroad.  As discussed above, I consider the new definition to be more appropriate, although still needing further refinement, and helpful in my determination of the motion for class certification.  Accordingly, I will deny this portion of the motion.

Defendants also object to Plaintiffs' apparently asserting, for the first time, that they may be seeking benefits under section 502(a)(1)(B) of ERISA.[2]  Although this discussion was in relation to claims that are now dismissed, I agree with Defendants that Plaintiffs' complaint does not indicate that they are seeking benefits under section 502(a)(1)(B) and that indeed Plaintiffs specifically denied that they were asserting such claims when arguing that they did not need to exhaust their administrative remedies. Plaintiffs' Response to Motion to Dismiss (doc no 20).  Accordingly, unless Plaintiffs seek leave to amend their complaint to expressly assert claims under section

_____

[2]Section 502(a)(1)(B) allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  However, a prerequisite to a section 502(a)(1)(B) claim is that the claimant exhaust administrative remedies provided in the plan.  *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990).

502(a)(1)(B) and such motion is granted, such claims are not at issue in this litigation. To the extent that Defendants' motion seeks clarification in this regard, it is granted.

Accordingly, it is ordered:

1.  Defendants' Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) (doc no 128) is granted in part and denied in part. Plaintiffs' Claims II and IV are dismissed for failure to state a claim. Plaintiffs' Claim I and Claim V remain pending.

2.  Plaintiffs' Motion to Certify Class and Conditional Approval of ADEA Collective Action (doc no 107) is granted in part and denied in part without prejudice. Plaintiffs are entitled to conditional approval of their ADEA collective action upon my satisfaction that the claim is not barred by the statute of limitations. Defendants shall file a limited motion for summary judgment (not to exceed 10 pages) concerning the timeliness of Plaintiff Tomlinson's charge of discrimination on or before April 14, 2008. Plaintiffs may file a response brief on this issue (not to exceed 10 pages) on or before April 28, 2008. No reply brief shall be filed. Plaintiffs' motion for class certification of the remaining ERISA claim (Claim V) is denied without prejudice.

3.  Plaintiffs shall file a notice amending their class definition in compliance with this order on or before March 31, 2008

4.  Defendants' Motion to File the Declaration of Kevin Minor (doc no 130) is denied as moot.

5.  Defendants' Motion to Strike New Arguments Raised in Plaintiffs' Reply (doc no

141) is granted in part and denied in part.  The motion is denied to the extent it

seeks to preclude Plaintiffs' proposed amended class definition.  The motion is

granted to the extent it seeks to preclude recovery by Plaintiffs pursuant to 29

U.S.C. § 1132(a)(1)(B).

DATED at Denver, Colorado, on March 19, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge