IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02686-WDM-MEH

WAYNE TOMLINSON,
ALICE BALLESTEROS, and
GARY MUCKELROY, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

EL PASO CORPORATION, and
EL PASO PENSION PLAN,

    Defendants.

---

**ORDER ON MOTION TO RECONSIDER AND
MOTIONS FOR SUMMARY JUDGMENT**

---

Miller, J.

This matter is before me on the Plaintiffs' Motion for Reconsideration of March 19, 2008 Decision (doc no 218) and two motions for partial summary judgment (doc nos 220 and 232) filed by Defendants El Paso Corporation and El Paso Pension Plan (collectively "El Paso"). On March 19, 2008, I ruled on a number of then pending motions and dismissed several of Plaintiffs' claims under the Employee Retirement Income Security Act ("ERISA"), leaving pending Plaintiffs' claim under the Age Discrimination in Employment Act ("ADEA") and a single ERISA claim regarding the adequacy of a summary plan description. Doc no 213. Upon review of the parties' filings and supplemental authority, I conclude oral argument is not required. For the reasons that follow, the Motion for Reconsideration will be denied. Defendants' motions for summary judgment will be granted.

## Background[1]

This case arises out of El Paso Corporation's conversion of its defined benefit pension plan, in particular one based on a final average pay formula to one based on a cash balance formula. Under the old plan, the amount of a retiree's monthly pension was based upon their years of credited service and a final average of salary. Under the amended plan, this amount is based upon the amount of credits employees accumulate throughout their years of service. Each participating employee is given a hypothetical account, and each quarter the employee earns "pay credits" based upon a percentage of their salary, and "interest credits" based upon the yield of a five-year U.S. Treasury Bond. *See generally, Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-63 (3d Cir. 2007) (comparing and contrasting traditional defined-contribution plans, traditional defined-benefit plans, and cash balance plans).

During a transition period between January 1, 1997, and December 31, 2001, participating employees accrued benefits under both the new and old plans, and retiring employees could elect whichever option benefitted them the most. Once this transition period expired retirees could still choose either option, but the old average pay plan was "frozen" at whatever benefits the employee had earned as of December 31, 2001. Benefits would continue to accrue under the new cash balance formula.

In this putative class action, Plaintiffs allege that El Paso set the initial cash balance accounts for older, longer-service employees at levels significantly below the value of their accumulated annuities under the old plan. One effect of the transition was

---

[1] For simplicity, I am reprinting the statement of facts from my March 19, 2008 Order on Motion for Judgment on the Pleadings and Motion for Class Action Certification (doc no 213).

that for some workers, overall benefits did not grow until the cash balance benefits caught up to and exceeded the "frozen" benefits due under the old formula. This period is commonly referred to as a "wear away."

Participants were notified of the changes to the plan in October 1996 by way of a letter and brochure. These documents informed participants that the amendments to the plan would take effect January 1, 1997, explained the mechanics of the cash balance approach and the five-year transition period, and gave examples of benefit accruals. In addition, a Summary Plan Description ("SPD") was distributed to employees in August 2002. Plaintiff Wayne Tomlinson filed a charge of discrimination with the EEOC on July 16, 2004.

Plaintiffs' first claim for relief is based on their allegation that the freezing of old plan accruals discriminated against older workers in violation of the Age Discrimination in Employment Act. Plaintiffs also asserted the following claims under ERISA: Violation of ERISA sections 203(a) and 204(b)(1)(B) (Claim II); Inadequate notice of amendment in violation of ERISA section 204(h) (Claim IV); Inadequate summary plan descriptions (Claim V). I dismissed Plaintiffs' third claim, that the cash balance plan violated ERISA, on March 22, 2007 (doc no 108) based on arguments and authorities in a Motion to Dismiss filed by Defendants. In my March 19, 2008 order (doc no 213), I dismissed Plaintiffs' second and fourth claims, which alleged violations of ERISA.

Plaintiffs move for reconsideration of the dismissal of Claim II and Claim IV. Defendants move for summary judgment on Claim I (ADEA) on the grounds that it is time-barred and on Claim V on the grounds that Plaintiffs did not rely on and/or were not prejudiced by the summary plan description for El Paso's plan and conversion, or,

alternatively, that the description was adequate.

## Standard of Review

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991). Fed. R. Civ. P. 59(e) will govern when the motion for reconsideration is filed within ten days of the judgment and Fed. R. Civ. P. 60(b) will govern all other motions. *Id.* Because Plaintiffs' motion was filed within ten days of my order dismissing Claims II and IV, I will treat it as a Rule 59(e) motion. A motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) should be granted only to address (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Such a motion is not an appropriate vehicle to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id. See also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence'") (citations omitted).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S.

4

242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

1. Motion to Reconsider

In my March 19, 2008 order, I ruled that El Paso's plan amendment and resulting wear away period for some employees did not violate the anti-backloading provisions of ERISA (Claim II). Specifically, I determined that the amendment complied with the "133 1/3" rule under 29 U.S.C. § 1054(b)(1), which requires that the value of the benefit accrued in any year may not exceed the value of a benefit accrued in any previous year by more than 33%. These rules are intended to prevent plans from providing low rates of accrual in an employee's early years of service and concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement. In arriving at this conclusion, I relied in particular on *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007) and *Wheeler v. Pension Value Plan for Employees of the Boeing Co.*, Case No. 06-cv-500-DRH, 2007 WL 2608875 at *12 (S.D. Ill. Sept. 6, 2007). I agreed with the courts in these cases that where a plan is amended, the new amendment is treated as in effect for other years for analyzing

5

backloading issues. I also rejected Plaintiffs' argument that the accrual rates under the pre-amendment and amended plans should be aggregated pursuant to 26 C.F.R. § 1.411(b)-1(a). I considered, but did not rely on, supplemental authority provided by Plaintiffs, specifically the February 1, 2008 Internal Revenue Service Revenue Ruling 2008-7 (Rev. Rul. 2008-7), 2008-7 I.R.B. 419, 2008 WL 274325. In addition, I dismissed Plaintiffs' claim of inadequate notice under 29 U.S.C. § 1054(h)(1)(A) (Claim IV) on the grounds that El Paso's notice of the changes to its retirement plan complied with the statute and accompanying regulations as they existed at the time. Plaintiffs ask me to reconsider my analysis of both claims.

With respect to Claim II, the anti-backloading claim, Plaintiffs primarily claim that I erred in rejecting the opinion set forth in the Revenue Ruling 2008-7. In that document, the IRS apparently takes the position that where, as here, a pension plan is converted to a cash balance formula, and the old formula continues for a period in which participants are allowed to continue to accrue benefits (i.e., a "grandfathering" period), the preconversion formula must be considered in addition to the new formula.[2] Plaintiffs argue that I must give this agency interpretation deference pursuant to *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

I disagree. Agency opinion letters "do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). They are, however, "entitled to respect under [ ] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the power to persuade." *Id.*

---

[2]In contrast, where benefits cease to accrue under the previous plan formula at the same time that the new formula under the cash balance plan begins, as in *Register*, the IRS agrees that only the new formula should be considered as being in effect.

6

(citations and internal punctuation omitted). As I noted in my original order, I did not find the analysis in the revenue ruling to be persuasive on the question of whether the pre- and post-conversion formulas had to be aggregated in determining compliance with the 133 1/3 rule.[3] Recently, the Ninth Circuit, considering an identical pension plan conversion with grandfathering and wear away periods, also found Revenue Ruling 2008-7 to be unpersuasive and rejected it. *Hurlic v. Southern Calif. Gas Co.*, 539 F.3d 1024 (9th Cir. 2008). The court in *Hurlic* noted that the IRS provided little in the way of reasoning for requiring aggregation whenever a plan contains a grandfathering provision. *Id.* at 1034. "It would be an odd result indeed to allow a pension plan which converts to a cash balance formula to freeze pre-conversion benefits immediately but forbid a plan from providing for a grace period in which participants can continue to accrue additional benefits before they are frozen." *Id.* at 1035. Moreover, as I also noted in this case, "neither the Plan's conversion to the cash balance formula nor its grandfather provision conflict with the objective of ERISA's 'anti-backloading' provisions, which is 'to prevent a plan from being unfairly weighted against shorter-term employees.'" *Id.* (quoting *Register*). I agree with the Ninth Circuit on this issue and will not revise my previous order dismissing Claim II.[4]

---

[3]In their reply brief, Plaintiffs also offer correspondence between the IRS and El Paso in which the IRS apparently takes the same position. Although Defendants object to the inclusion of these letters on various evidentiary grounds, I will consider them as documentation of an informal opinion of the agency.

[4]Finally, I note that, according to supplemental authority provided by the parties, Revenue Ruling 2008-7 applies only for the purposes of IRS tax qualification rules, not for the purposes of on-going ERISA litigation. May 28, 2008 Treasury Department Letter, reprinted in 2008 Tax Notes Today (TNT) 108-17. Moreover, the revenue ruling provides relief from disqualification "for a limited class of plans under which a group of employees specified under the plan receives a benefit equal to the greatest of the

I also will not amend my order with respect to Claim V concerning the adequacy of the notice provided to plan participants. In 1996, when notice of the plan changes was sent to participants, then existing regulations required only that the notice be written, set forth the amendment (or a summary thereof), and set forth the amendment's effective date. 26 C.F.R. § 1411(d)-6T(1996). Moreover, the regulation expressly did not require the plan to "explain how much the individual benefit of each participant . . . will be affected by the amendment." *Id.* I concluded that the notice provided was adequate.

Plaintiffs again argue that the notice expressly had to tell employees about benefit reductions and that evidence indicates that El Paso did not intend to notify its employees of a reduction in benefit accruals. Again, however, in light of the express requirements of the regulations, I see no basis to conclude that El Paso's conduct violated the law as it existed at the time.[5] Plaintiffs again argue as well that the 2001 changes to the notice requirement should have somehow applied to a notice issued in

---

benefits provided under two or more formulas (an applicable 'greater-of' benefit), provided that each such formula standing alone would satisfy an accrual rule of section 411(b)(1)(A), (B), or (C) for the years involved." 73 F.R. 34665, 34667. This relief applies to plan years beginning before January 1, 2009, which would apparently include El Paso's plan conversion. Similarly, new proposed regulations clarify that where participants receive the "greater of" benefits calculated under separate formulas, the 133 1/3 test should be applied separately to each formula. 73 F.R. 34665, 34668. I conclude that this approach is more consistent with the express language of the regulations and the intent of the anti-backloading rules.

[5]Plaintiffs cite *Amara v. CIGNA Corp.*, 534 F.Supp.2d 288 (D.Conn. 2008) for the proposition that information about benefit accrual reductions had to be included in an ERISA § 204 notice in 1996. *Amara* does not so hold. Rather, the court noted that it did not need to decide whether the notice had to inform participants of such reductions because the notice (as well as other information from the company) was materially misleading. 534 F. Supp. 2d at 339.

1996.  Plaintiffs' cited law and argument are unavailing, as I have already determined that the notice and plan amendment were effective before 2001.

I do not perceive any clear error or manifest injustice; moreover, Plaintiffs' motion does not identify a change in the law or new evidence relevant to my previous dismissal of Claims II and IV.  Accordingly, the motion to reconsider will be denied.

2. <u>Claim I - ADEA</u>

Defendants move for summary judgment on Plaintiffs' ADEA claim, arguing that Wayne Tomlinson, the only named plaintiff to file a charge discrimination with the Equal Employment Opportunity Commission ("EEOC"), did not do so in a timely manner.  It is undisputed that a timely administrative charge is a prerequisite to suit under the ADEA.  Mr. Tomlinson's charge of age discrimination was filed on July 16, 2004; he also filled out an intake questionnaire on June 16, 2004.  Even giving him the benefit of the earliest possible filing date, June 16, 2004, his charge would have to encompass discriminatory conduct occurring in the previous 300 days, or after August 20, 2003.  29 U.S.C. § 626(d)(2) (aggrieved employee must file a charge with the EEOC within 300 days of the alleged unlawful discriminatory practice).  Defendants argue that all the relevant alleged discriminatory acts occurred, and were known by Mr. Tomlinson, long before this date.  Therefore, they argue, the ADEA claim is time-barred.

As noted above, the plan was amended effective January 1, 1997 and the transition period closed on December 31, 2001.  In his deposition, Mr. Tomlinson concedes that he understood before 2001 that the wear away effect would occur in his case.  Tomlinson Depo., Ex. 6 to Memorandum in Support of Motion for S.J. on Claim I (doc no 221-7) at 68-69.  Indeed, he received a statement about his account in

September 1999 which clearly showed, in bar graph form, the time it would take for his cash balance account to catch up to his frozen pre-conversion benefit. Ex. 11 to Memorandum in Support of Motion for S.J. on Claim I (doc no 221-12) at P304. In an email dated August 7, 2003, Mr. Tomlinson discusses his belief that the wear away effect is discriminatory and possible litigation. Ex. 12 to Memorandum in Support of Motion for S.J. on Claim I (doc no 221-13). Mr. Tomlinson does not identify any additional conduct or new information about the plan that he obtained within 300 days of filing his charge of discrimination. Defendants argue that the adverse employment action here was the plan conversion, which was complete no later than December 31, 2001. They further argue that Mr. Tomlinson had notice of the alleged discriminatory effects of the implementation of the cash balance plan and the resulting wear away period no later than 1999.

In response, Plaintiffs argue that the amended pension plan represents a "pattern and practice" of age discrimination, which occurred each time benefits were calculated. However, I conclude that this approach is foreclosed by the recent decision of the United States Supreme Court in *Ledbetter v. Goodyear Tire and Rubber Company*, 550 U.S. 618 (2007). In that case, the plaintiff alleged that her employer had intentionally discriminated against her on the basis of sex by giving her unfavorable performance ratings; as a result, she received smaller pay checks from 1997 onward. She did not file a charge of discrimination until March 1998, beyond the applicable administrative charging period. The court ruled that the plaintiff's claim was time barred. "[B]ecause a pay-setting decision is a discrete act, it follows that the period for filing an EEOC charge begins when the [pay-setting decision] occurs." *Ledbetter*, 127 S. Ct. at 2165. "A new

violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Id.* at 2169. The court also limited its previous holding in *Bazemore v. Friday*, 478 U.S. 385 (1986) (*per curiam*), which permitted an ongoing charging period whenever an employer issues paychecks using a discriminatory pay structure, to circumstances involving a system that is facially discriminatory or not neutrally applied. *Id.* at 2174.

I agree with Defendants that, here, the conversion of the pension plan to a cash balance plan was a discrete act. Analogous to *Ledbetter*, the "benefits-setting decision" was implemented when the initial balances and accrual rates in the cash balance plan were set, which occurred long before August 2003. These decisions, and the plan itself, are facially non-discriminatory. Rather, pay credits under the CSP are more generous for older workers and workers with longer term service, not vice versa. Under the plan, pay credits are determined based on an employee's combined age and years of service; as those increase, the percentage of pay received as a pay credit increases as well. See, e.g., 2002 SPD, Ex. A to Memorandum in Support of Motion for S.J. on Claim V (doc no 233-2) at 8 (showing that pay credits increase from 4% of pay to 7% of pay). Similarly, Plaintiffs have provided no evidence that initial balances were calculated pursuant to a different formula for younger workers. Including a five year grandfathering period and permitting employees to keep the greater of the benefits accrued under either plan also provides a greater advantage to workers with larger accrued benefits under the old plan than does simply freezing benefits at the previous level.

Plaintiffs appear to argue that the wear-aways were "standard procedure," relying on expert reports that show that the wear away effect can prevent an older, longer-service employee from earning additional benefits for many years. Because the "greater of" formulation creates a wear away effect in combination with a number of age-related factors (presumably years of service and salary), Plaintiffs appear to argue that the plan is facially discriminatory. I disagree. As noted in numerous cases that have considered conversions similar to this one, the wear away effect correlates not to age but to the size of the accrued benefits under the old plan, which is affected by both salary and years of service. *See, e.g., Custer v. Southern New England Tel. Co.*, 2008 WL 222558, at *10 (D. Conn. 2008) ("The 'wear-away' period is not necessarily longer for older workers; it is longer for workers that have greater frozen benefits. Under the old plan, the size of a worker's frozen benefits is a function of a worker's salary and years of service, not his age."). A younger employee with more years of service, and/or a higher salary, could be subject to a longer wear away period than an older employee with fewer years of service and/or a lower salary. Plaintiffs offer no evidence to show that two employees, one younger and one older, with the same accrued frozen benefit under the old plan and the same salary, would suffer different wear away periods. Accordingly, I conclude that the plan is facially non-discriminatory.

Because the plan is age-neutral, I conclude that the statute of limitations is governed by *Ledbetter,* not by *Bazemore*. Plaintiffs' cause of action was triggered by the adoption of the cash balance plan, which was complete no later than December 31, 2001. Because the discriminatory act and Mr. Tomlinson's actual knowledge of that act and its alleged disparate effect on older workers occurred more than 300 days before

he filed his charge of discrimination, this claim is time-barred.

### 3. Claim V - Summary Plan Description

Plaintiffs claim that Defendants violated 29 U.S.C. § 1022, which requires that a summary plan description be distributed to all plan participants and that the SPD be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Plaintiffs contend that the 2002 SPD did not disclose that the amended plan "(a) cause[d] older participants to earn no additional benefits beyond those already earned; (b) significantly reduce[d] the rate of future benefit accruals; and (c) change[d] the basis for benefits to year-by-year salary, whereas the 'old' formula based all benefits on compensation a highest pay base averaging period." Complaint ¶ 56. In addition, Plaintiffs allege that the SPD did not offer comparisons of benefits under the old and new formula that would have shown disadvantages of the new plan. Complaint ¶ 57. Plaintiffs also allege that the SPD is not written in a manner calculated to be understood by the average plan participant and does not sufficiently apprise participants of the rights and obligations. Complaint ¶ 57. Finally, Plaintiffs contend that the failure to disclose the disadvantages of the new plan violated the fiduciary duty under 29 U.S.C. § 1104(a)(1).

As an initial matter, as Defendants point out, the SPD did indeed disclose that the basis for benefits had changed, and Plaintiffs do not dispute this. In addition, Defendants contend that the undisputed evidence shows that Plaintiffs did not rely on the SPD and suffered no prejudice because the information was disclosed in other ways. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996) (to secure relief,

claimant must show some significant reliance upon, or possible prejudice flowing from, the allegedly faulty description in SPD). In the alternative, Defendants argue that the changes to a plan need only be described in a 204(h) notice, not necessarily in the SPD. Because I agree with Defendants that Plaintiffs do not present evidence giving rise to a genuine issue of material fact regarding reliance or prejudice, I do not address whether additional information had to be contained in the SPD.

Plaintiffs' deposition testimony establishes that they did not consult the SPD, except for the limited purpose of finding specific information that was contained in the SPD. In response, Plaintiffs assert that it is not established that the Plaintiffs ever received the SPD [6] and contend that Plaintiffs could have heard about the contents of the SPD from other employees. Plaintiffs miss the point. Regardless of the reason, if Plaintiffs did not ever read the SPD, they cannot have been injured by any reliance upon allegedly inadequate information contained therein. Accordingly, I agree that the undisputed evidence shows that Plaintiffs cannot demonstrate reliance upon the allegedly faulty SPD.

I also agree with Defendants that Plaintiffs cannot establish prejudice because they were informed of the reduction in the benefits accrual rate and of the wear away effect through other sources. Plaintiffs' claim is based on the 2002 SPD. Defendants point to numerous sources of information that disclosed to Plaintiffs that accrual rates would be lower, including a January 11, 1996 document entitled "Employee Update,"

---

[6]Plaintiffs argue that "El Paso has provided no evidence that it distributed SPDs with the disclosures of benefit reductions and losses that are required by law." Response to Motion for S.J. on Claim V (doc no 237) at 10. Plaintiffs, however, do not have a claim based on any alleged failure to properly distribute the SPD.

which contains the following: "Effective January 1, 1997, the current pension plan will be converted to a new type of plan called a 'cash balance plan.' . . . Under the cash balance plan, employees will earn future benefits at a lower rate than under the current plan."[7]  Ex. H to Memorandum in Support of Motion for S.J. on Claim V (doc no 233-9) at 26.  In addition, in 1999, as discussed above, each employee received an individualized account statement which showed, in bar graph form, a comparison of the participant's benefit in the cash balance plan and the previous plan over time until age 65.  Ex. I to Memorandum in Support of Motion for S.J. on Claim V (doc no 233-10) at P0047.  The bar graph clearly shows the wear away effect, as it shows both the frozen old benefit and the growing cash balance plan benefit at several intervals.  In the example provided, the bar graph shows that the cash balance benefit does not exceed the participant's frozen previous benefit even at age 65.  *Id.*  I see no prejudice to Plaintiffs from the alleged failure to disclose in the SPD information that was already disclosed, and even illustrated individually, before the SPD was ever issued.  Plaintiffs also have offered no evidence of action they would have taken or not taken, or otherwise avoidable losses incurred, because of the allegedly inadequate SPD.

In response, Plaintiffs argue that additional discovery is needed, specifically to obtain information on how the SPD was drafted and distributed, as well as any intent to conceal benefit reductions.  Such evidence, however, would not alter my analysis here,

---

[7] I note also that other sources indicate that pension benefits under the new plan will be less generous.  For example, in the opening letter to the October 1996 plan highlights brochure, the memo states, "In the past, El Paso was able to provide employees with a very rich retirements benefits package.  Our plans still provide excellent benefits, but are no longer at the top of the range."  Ex. 11 to Plaintiffs' Response to Motion for S.J. on Claim V (doc no 237-12).

as it would shed no light on the issues of reliance or prejudice.  Accordingly, this request is denied.  Plaintiffs also proffer expert reports in which their expert witnesses opine that the SPD does not disclose the reduction of benefit rates and the wear away.  Again, this is irrelevant since Defendants have not disputed this.  Finally, Plaintiffs contend that the disclosures from other sources were inadequate.  I disagree.  As noted above, the Defendants clearly notified participants that benefits under the new plan were less generous than under the old plan; in addition, participants had an individualized statement comparing their benefits under both plans over time.

Because Plaintiffs have not demonstrated a genuine issue of material fact regarding any reliance or prejudice resulting from the allegedly defective SPD, I conclude that they are not entitled to any relief even if the SPD did not satisfy ERISA. Accordingly, judgment should enter as a matter of law against Plaintiffs on Claim V.

Accordingly, it is ordered:

1. Plaintiff's Motion for Reconsideration of March 19, 2008 Decision (doc no 218) is denied.

2. Defendants' motions for partial summary judgment (doc nos 220 and 232) are granted.

3. Summary judgment shall enter against Plaintiffs and in favor of Defendants on Claim I and Claim V.  All other claims were previously dismissed.

4. Defendants may have their costs.

DATED at Denver, Colorado, on January 21, 2009.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge