IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02686-WDM-MEH

WAYNE TOMLINSON,
ALICE BALLESTEROS, and
GARY MUCKELROY, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

EL PASO CORPORATION, and
EL PASO PENSION PLAN,

    Defendants.

## ORDER ON MOTION TO ALTER OR AMEND JUDGMENT

Miller, J.

This matter is before me on the Plaintiffs' Motion to Alter or Amend Judgment Entered on January 23, 2009 (doc no 313). Defendants oppose the motion. For the reasons that follow, the motion will be granted.

The facts of this case are fully set forth in my most recent order (doc no 311) disposing of Plaintiffs' claims. In short, this case arises out of El Paso Corporation's conversion of its defined benefit pension plan, in particular one based on a final average pay formula to one based on a cash balance formula. Under the old plan, the amount of a retiree's monthly pension was based upon their years of credited service and a final average of salary. Under the amended plan, this amount is based upon the amount of credits employees accumulate throughout their years of service. A five-year transition period was used before full implementation of the amended plan whereby participating employees accrued benefits under both the new and old plans, and retiring employees

could elect whichever option benefitted them the most. Once this transition period expired retirees could still choose either option, but the old average pay plan was "frozen" at whatever benefits the employee had earned as of December 31, 2001. Benefits would continue to accrue under the new cash balance formula.

Plaintiffs' motion to amend concerns my ruling on Plaintiffs' claim that the "wear away" period for some workers, meaning the time that overall benefits did not grow until the cash balance benefits caught up to and exceeded the "frozen" benefits due under the old formula, violates the Age Discrimination in Employment Act (ADEA). I granted summary judgment in favor of Defendants based on my conclusion that none of the Plaintiffs had filed a timely charge of discrimination within 300 days of the alleged discriminatory act. Plaintiffs argue that the passage of the Lilly Ledbetter Fair Pay Act of 2009, P.L. 111-2, (the "Ledbetter Act") which was signed into law shortly after my order, modifies the time limit for when a charge of discrimination needs to be filed.

### Standard of Review

A motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) should be granted only to address (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Such a motion is not an appropriate vehicle to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* See also *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence'") (citations omitted). Because the Ledbetter Act is

a change in the controlling law, which appears to be retroactive in application, it is appropriate for me to consider the effect of this statute on my previous ruling.

## Discussion

As I previously noted, Wayne Tomlinson is the only named plaintiff to file a charge discrimination with the Equal Employment Opportunity Commission ("EEOC"), a prerequisite to suit under the ADEA. There is no dispute that even giving Mr. Tomlinson the benefit of the earliest possible filing date, June 16, 2004, his charge would have to encompass discriminatory conduct occurring in the previous 300 days, or after August 20, 2003. 29 U.S.C. § 626(d)(2) (aggrieved employee must file a charge with the EEOC within 300 days of the alleged unlawful discriminatory practice). I concluded that the discriminatory act triggering the need to file a charge was the amendment to the plan, which occurred effective January 1, 1997 and was complete in December 2001. It was undisputed that Mr. Tomlinson understood before 2001 that the wear away effect would occur in his case and that he received notification in September 1999 which clearly showed, in bar graph form, the time it would take for his cash balance account to catch up to his frozen pre-conversion benefit. Plaintiffs argued that the discriminatory act occurred each time benefits were calculated. I rejected this argument in part based on the decision of the United States Supreme Court in *Ledbetter v. Goodyear Tire and Rubber Company*, 550 U.S. 618 (2007), which concerned discrimination in pay. Relying on *Ledbetter,* I held that "Plaintiffs' cause of action was triggered by the adoption of the cash balance plan, which was complete no later than December 31, 2001. Because the discriminatory act and Mr. Tomlinson's actual knowledge of that act and its alleged disparate effect on older workers occurred more than 300 days before he filed his

3

charge of discrimination, this claim is time-barred." January 21, 2009 Order (doc no 313).

The Ledbetter Act was passed in response to the *Ledbetter* decision, which Congress determined was unduly restrictive with respect to the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices. P.L. 111-2, Sec. 2 Findings. It amends the ADEA, and other non-discrimination statutes, by adding the following language:

> For the purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting whole or in part from such a decision or other practice.

29 U.S.C. § 626 (3). The Act takes effect as if enacted on May 28, 2007 and is intended to apply to all claims pending on or after that date. P.L. 111-2, Sec. 6 Effective Date.

Defendants argue that the Ledbetter Act is not intended to apply to pensions, as supported by the Supreme Court's holding in *Florida v. Long*, 487 U.S. 223 (1988), and that Plaintiffs still have not identified a discrete discriminatory act occurring within 300 days of the charge of discrimination that would support a claim.

The authority provided by both Plaintiffs and Defendants persuades me that my reliance on the *Ledbetter* decision may have been misplaced. The legislative history of the Ledbetter Act, as well as the reasoning in *Florida v. Long*, demonstrates the differences between pension and paycheck cases. As noted in *Long*,

> In a salary case . . . each week's paycheck is compensation for work presently performed and completed by an employee. Further, the employer does not fund its payroll on an actuarial basis. By contrast, a pension plan, funded on an actuarial basis, provides benefits fixed under a contract between the employer and retiree based on a past assessment of an employee's expected years of service, date of retirement, average final salary, and years of projected benefits. In the pension fund context, a continuing violation principle in every case would render employers liable for all past conduct . . . . We cannot recognize a principle of equitable relief that ignores the essential assumptions of an actuarially funded pension plan.

487 U.S. at 239. In *Long*, the Supreme Court refused to apply a continuing violation principle to a pension plan, distinguishing the case from the "pattern and practice" analysis of *Bazemore v. Friday*, 478 U.S. 385 (1986).[1] *Id.* Similarly, the Ledbetter Act expressly provides that it is not "intended to change current law treatment of when pension distributions are considered paid," P.L. 111-2 Section 2 Findings, at (4). This indicates that the Congress understood that there are significant differences between compensation and retirement benefits. This is borne out in the legislative history, in which *Long* is cited for the proposition that while a paycheck scheme is applied to every paycheck, a pension structure is applied only once, when the employee retires, and the pension checks merely flow from that single application. H.R. Report 110-237 at 18. Similarly, the policy justifications for enacting the Ledbetter Act include the difficulty of detecting pay discrimination, since pay-setting decisions are unlikely to be viewed as discriminatory and information about comparators is generally confidential. *Id.* at 7.

---

[1]The Supreme Court has recently confirmed that *Bazemore* is a limited holding. *A T & T Corp. v. Hulteen*, 129 S. Ct. 1962, 1972 (2009). *Hulteen*, however, does not shed any light on the issue before me, which is whether the Ledbetter Act applies in these circumstances.

5

Here, by contrast, the wear away effect was apparent as early as 1999, as was the alleged correlation to older employees with larger pension balances under the old formula.

I note, however, that this case does not concern payment of retirement benefits pursuant to a retirement plan, which was the focus of *Long*, but rather the rate of accrual of benefits. The Ledbetter Act preserves the existing law concerning when a discriminatory pension distribution or payment occurs, i.e., upon retirement, not upon the issuance of each check. Mr. Tomlinson's charge of discrimination, however, was filed when he was an active employee and did not concern payment of retirement benefits. Accordingly, it does not appear that either *Bazemore* or *Long* is controlling here.

In the absence of further authority indicating otherwise, I conclude that the plain language of the Ledbetter Act may apply in these circumstances and that my previous analysis regarding the timeliness of the charge of discrimination cannot stand. The Act covers "wages, benefits, or other compensation," which appears to include employer contributions to a pension plan. It provides that a discriminatory act occurs when an individual is "affected" by the application of a discriminatory compensation decision or other "practice," which could plausibly include the accrual of pension benefits. There does not appear to be any dispute that Mr. Tomlinson accrued a pay credit within 300 days of his charge of discrimination, since he did not retire until several years after his charge. Because that pay credit allegedly did not result in any increase to his pension benefit during the wearaway period, it would appear that this is an application of an allegedly discriminatory practice affecting Plaintiff, and could plausibly bring it within the

ambit of the Ledbetter Act.  In addition, Defendants do not contest that Plaintiffs' ADEA claim may have been pending on May 28, 2007, the effective date of the Ledbetter Act, since this lawsuit was initiated in 2004.  Therefore, the portion of my order granting Defendants' Motion for Summary Judgment on Plaintiffs' Claim 1, violation of the ADEA, is inconsistent with the Act and must be reversed.

Because it will now be necessary to consider the claim on the merits, I conclude that Defendants should be permitted to file a new motion for summary judgment.  In particular, I note that the relatively recent arguments and authority contained in *Hurlic v. Southern Calif. Gas Co.*, 539 F.3d 1024 (9th Cir. 2008) would be pertinent.  I note also that the Supreme Court recently addressed the framework for analyzing ADEA claims in *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343 (2009), which may affect the resolution of Plaintiffs' ADEA claim.

Accordingly, it is ordered:

1. Plaintiffs' Motion to Alter or Amend Judgment (doc no 313) is granted.  My January 21, 2009 order (doc no 311) on Plaintiffs' Motion to Reconsider and Motions for Summary Judgment is amended to deny Defendants' Motion for Summary Judgment on Plaintiffs' ADEA claim (Claim 1).  I do not find that Plaintiffs' ADEA claim is barred for failure to timely file a charge of discrimination with the EEOC.  The Clerk's Judgment (doc no 312) shall be vacated.

2. Plaintiffs' Motion to Strike Amended Motion for Summary Judgment on ADEA Claim (doc no 331) is granted.  Defendants' Amended Motion for Summary Judgment on ADEA Claim (doc no 324) shall be stricken.  The

Motion for Leave to File Excess Pages (doc no 327) is denied as moot.

3. Defendants may file a renewed motion for summary judgment on the ADEA claim (Claim 1), within 20 days of the date of this order. Response and reply briefs shall be filed in accordance with the Federal Rules of Civil Procedure and the Local Rules of this court.

DATED at Denver, Colorado, on August 28, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge