IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02686-WDM-MEH

WAYNE TOMLINSON,
ALICE BALLESTEROS, and
GARY MUCKELROY, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

EL PASO CORPORATION, and
EL PASO PENSION PLAN,

    Defendants.

**ORDER ON RENEWED MOTION FOR SUMMARY JUDGMENT**

Miller, J.

    This matter is before me on the Renewed Motion for Summary Judgment on ADEA Claim (Docket No. 362), filed by Defendants El Paso Corporation and El Paso Pension Plan (collectively "El Paso"). Plaintiffs oppose the motion. Upon review of the parties' filings and supplemental authority, I conclude oral argument is not required. For the reasons that follow, the motion for summary judgment will be granted and judgment shall enter as a matter of law on Plaintiff's sole pending claim, brought under the Age Discrimination in Employment Act ("ADEA").

Background

    This case arises out of El Paso Corporation's conversion of its defined benefit pension plan, in particular one based on a final average pay formula to one based on a cash balance formula. Under the old plan, the amount of a retiree's monthly pension was based upon their years of credited service and a final average of salary. Under the

amended plan, this amount is based upon the amount of credits employees accumulate throughout their years of service. Each participating employee is given a hypothetical account, and each quarter the employee earns "pay credits" based upon a percentage of their salary, and "interest credits" based upon the yield of a five-year U.S. Treasury Bond. *See generally, Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-63 (3d Cir. 2007) (comparing and contrasting traditional defined-contribution plans, traditional defined-benefit plans, and cash balance plans).

During a transition period between January 1, 1997, and December 31, 2001, participating employees accrued benefits under both the new and old plans, and retiring employees could elect whichever option benefitted them the most. Once this transition period expired retirees could still choose either option, but the old average pay plan was "frozen" at whatever benefits the employee had earned as of December 31, 2001. Benefits would continue to accrue under the new cash balance formula.

In this putative class action, Plaintiffs allege that El Paso set the initial cash balance accounts for older, longer-service employees at levels significantly below the value of their accumulated annuities under the old plan. One effect of the transition was that for some workers, overall benefits did not grow until the cash balance benefits caught up to and exceeded the "frozen" benefits due under the old formula.[1] This period is commonly referred to as a "wear away."

Plaintiffs' first claim for relief is based on their allegation that the freezing of old plan accruals discriminated against older workers in violation of the ADEA, specifically

---

[1]This is disputed to some extent. Defendants argue that the benefit under the old plan was only "frozen" if considered as a benefit payable at normal retirement age (age 65) but not if calculated as an early retirement benefit at any point before then.

29 U.S.C. § 623(a), as described further below.  Plaintiffs also asserted the following claims under the Employee Retirement Income Security Act ("ERISA"): Violation of ERISA sections 203(a) and 204(b)(1)(B) (Claim II); Inadequate notice of amendment in violation of ERISA section 204(h) (Claim IV); Inadequate summary plan descriptions (Claim V).  I dismissed Plaintiffs' third claim, that the cash balance plan violated ERISA, 29 U.S.C. § 1054(b)(1)(H), on March 22, 2007 (Docket No. 108) based on arguments and authorities in a Motion to Dismiss filed by Defendants.  On March 19, 2008, I ruled on a number of then pending motions and dismissed Plaintiffs' second and fourth claims, leaving pending the ADEA claim (Claim I) and the remaining ERISA claim regarding the adequacy of a summary plan description (Claim V).  Docket No. 213.

Defendants thereafter moved for summary judgment on Claim I on the grounds that it is time-barred and on Claim V on the grounds that the summary plan description was adequate under the law at the time.  On January 21, 2009, I granted summary judgment on the remaining claims, determining specifically as a matter of law that Plaintiffs' ADEA claim was barred by the failure to file a timely charge of discrimination with the EEOC.  Docket No. 311.  However, shortly after I issued by decision, the Lilly Ledbetter Fair Pay Act of 2009, P.L. 111-2, (the "Ledbetter Act") was enacted, which modifies the time limit for when a charge of discrimination needs to be filed in certain cases.  Because of the retroactive effect of the Ledbetter Act and uncertainty about its scope, I concluded that my previous disposition of Plaintiffs' ADEA Claim could not stand.  I therefore amended my decision with regard to Plaintiffs' ADEA Claim and requested that the parties brief the ADEA claim on the merits.  Docket No. 359.  The issues on this last remaining claim are now fully briefed and ready for review.

3

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

Discussion

Defendants offer several grounds in support of their motion for summary judgment. First, they contend that recent case law, most specifically *Hurlic v. Southern Calif. Gas Co.*, 539 F.3d 1024 (9th Cir. 2008), has established that age discrimination claims concerning wear away periods are not cognizable under subsection (a) of 29 U.S.C. § 623 [ADEA] but rather must be brought under subsection (i) of the same statute. Second, they assert that a claim under subsection (i), 29 U.S.C. § 623(i), even if properly pled, would fail because this provision is given the same effect as section 204(b)(1)(H) of ERISA, 29 U.S.C. § 1054(b)(1)(H). Since I already dismissed Plaintiff's claim under this section of ERISA, Defendants assert that the parallel ADEA claim

4

would also be dismissed.

As discussed further below, I agree with Defendants that under the ADEA, claims relating to "the reduction of the rate of an employee's benefit accrual," such as the effect of the wear away here, are governed in the first instance by 29 U.S.C. § 623(i). Because the plan complies with this subsection, I agree that the claim cannot be brought under subsection 623(a). I do not address Defendants' other arguments in support of their motion for summary judgment.[2]

The ADEA contains several provisions prohibiting discrimination on the basis of age. Subsection (a) contains the general anti-discrimination provision, which is as follows:

> It shall be unlawful for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way

---

[2]Defendants also argue that because Plaintiffs retired before age 65, their claims should be analyzed under the plan terms governing early retirement and that the value of early retirement benefits under the old plan actually continued to grow after the transition period. This argument is based on features of the old plan that contained reduction factors for taking early retirement; these reduction factors decreased as Plaintiffs got closer to age 65 or age 60 plus 30 years of service. Plaintiffs dispute that this decrease in reduction factors amounts to an actual increase in the value of their benefits. Defendants' next assertion is that the wear away period does not occur "because of" age, which is an essential element of any ADEA claim, but rather because of years of service and salary and, more specifically, the difference between a participant's accruals under the old plan and the cash balance benefit. Defendants further argue that Plaintiffs cannot show that the alleged wear away caused an adverse impact on Plaintiffs. Next, Defendants contend that even if the plan and transition period amounted to a violation of the ADEA, they are entitled to an affirmative defense under 29 U.S.C. § 623(f)(2)(B)(i). Finally, they again argue that Plaintiffs failed to exhaust administrative remedies.

5

> which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). However, the statute contains a separate provision relating specifically to pension benefit plans, which states that it shall be unlawful for an employer to establish or maintain an employee pension benefit plan which requires or permits "in the case of a defined benefit plan,[3] the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age . . ." 29 U.S.C. § 623(i)(1)(A). Subsection (i) contains additional terms regarding limitations on the amount of benefits a plan may provide (unrelated to age) and requirements concerning distributions, interest credits, and other matters concerning the establishment and operation of such benefit plans. Of importance here is the following paragraph: "Compliance with the requirements of this subsection with respect to an employee pension benefit plan shall constitute compliance with the requirements of this section relating to benefit accrual under such plan." 29 U.S.C. § 623(i)(4).

Finally, the ADEA contains a sort of safe harbor or affirmative defense in subsection (f) for actions that would otherwise be prohibited:

> It shall not be unlawful for an employer, employment agency, or labor organization . . . to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section--
>
> * * *

---

[3] The cash balance plan is considered to be a defined benefit plan under the law, but in function is more of a hybrid of a defined benefit and defined contribution plan. *Register*, 477 F.3d at 62.

6

> (B) to observe the terms of a bona fide employee benefit
> plan--
> (i) where, for each benefit or benefit package, the actual
> amount of payment made or cost incurred on behalf of an
> older worker is no less than that made or incurred on behalf
> of a younger worker . . . .

29 U.S.C. § 623(f)(2)(B).

Several courts have discussed the interaction between subsection (a) and subsection (i) in the context of age discrimination claims based on the wear away effect after a plan conversion such as El Paso's. Most notably, the Ninth Circuit in *Hurlic* examined these provisions and similar provisions in ERISA. The *Hurlic* court noted that subsection (i)(1)(A) of the ADEA (29 U.S.C. § 623(i)(1)(A)) mirrors ERISA section 204(b)(1)(H)(i) (29 U.S.C. § 1054(b)(1)(H)(i)) and the two are intended to have an identical meaning. 539 F.3d at 1036. In *Hurlic*, as in this case, it was determined that the cash balance plan, and the accruals thereunder, do not violate ERISA § 204(b)(1)(H)(i). *Id.* Accordingly, the plan does not violate the parallel provision of the ADEA. *Id.*

The plaintiffs in *Hurlic* sought to bring their age discrimination claim relating to the wear away effect, resulting from their employer's transition to a cash balance plan, under a California statute that was equivalent to subsection subsection (a), the general anti-discrimination provision of the ADEA (29 U.S.C. § 623(a)). The court determined that a claim relating to a wear away concerns "benefit accrual" and therefore must be brought under subsection (i). 539 F.3d at 1037. Since paragraph (i)(4) states that compliance with subsection (i) constitutes compliance with the ADEA, see 29 U.S.C. § 623(i)(4), and the rate of benefit accruals do not violate subsection (i), the court held that the claim could not be asserted under subsection (a) [which preempted its state

equivalent]. *Id.* In part, the court relied on the legislative history of the enactment of subsection (i), which indicates an intent to limit relief under the ADEA for claims relating to benefit accruals to subsection (i). *Id.*

Several district courts have followed the reasoning of Hurlic and similarly held that claims that a wear away effect from a plan transition violated to the ADEA must be examined under subsection (i), not subsection (a). *See, e.g., Northwest Airlines, Inc. v. Phillips,* 594 F. Supp. 2d 1075 (D. Minn. 2009); *Jensen v. Solvay Chemicals, Inc.,* Case No. 06-cv-273 (D. Wyo., August 3, 2009).

In response, Plaintiffs argue that the ADEA prohibits age discrimination "in all forms of employee benefits," which means that if a claim based on periods of wear away are not covered by subsection (i), they must be covered by some other section. Plaintiffs also cite *Engers v. A T & T*, No. Civ. A. 98-3660(SRC), 2007 WL 958472 (D. N.J., Mar. 29, 2007) (*Engers I*) in support of their position that subsection (i) does not necessarily control. In *Engers I*, the court denied the defendant's motion to dismiss an ADEA claim relating to pension benefit accruals brought under subsection (a), concluding that benefit accrual issues can arise under subsections other than subsection (i). *Engers,* 2007 WL 958472 at * 3. The decision also rested in part on the court's finding that the question of the plan's compliance with subsection (i) had not yet been resolved in the proceedings.[4]

---

[4]Plaintiffs also cite *George v. Duke Power*, 560 F. Supp. 2d 444 (D.S.C. 2008), which permitted a wear away claim to proceed under subsection (a). However, since *George* did not address the interaction between subsections (a) and (i) of the ADEA, I do not consider it to be informative on this question. Plaintiffs also argue that the Internal Revenue Service "may" have concerns about wear away periods, as shown by form letters from 2004 and 2007. Exh. 23 to Plaintiffs' Opposition (Docket No. 376-24). This evidence does not demonstrate a clear position from the IRS in this regard and so I

I disagree with Plaintiff's interpretation and do not find the reasoning in *Engers I* to be persuasive. Although the language of subsection (a) is broad, it is clearly modified by the limitation of subsection (i)(4), which states that compliance with the subsection "shall constitute compliance with the requirements of this section relating to benefit accrual under such plan." 29 U.S.C. § 623(i)(4). Subsection (i) does not prohibit all differences in pension benefits among employees of different ages, but rather makes unlawful an employer's cessation or reduction in the rate of an employee's "benefit accrual" because of age. As has been noted by numerous courts, this terminology in ERISA and the ADEA means that Congress intended only to regulate the rate that an employee's benefits increase rather than the participant's total accrued benefit. *Hurlic*, 539 F.3d at 1030 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 897 (1996) ("A reduction in total benefits due is not the same as a reduction in the rate of benefit accrual; the former is the final outcome of the calculation, whereas the latter is one of the factors in the equation.")); *Register*, 477 F.3d at 68 ("Thus, the 'benefit' as used in the phrase 'benefit accrual' refers to the stated account balance as that is how the benefit is defined by cash balance plans. Once this proposition is grasped, it becomes clear that the 'accrual' of 'benefit' in section 1054(b)(1)(H)(i) refers to the credits deposited into the participant's cash balance accounts, *i.e.*, the inputs."). As I have previously determined, the cash balance plan does not reduce the rate of an employee's benefit accrual because of age; under the plan, El Paso gives older employees as many interest credits as younger employees and gives higher pay credits to employees based on age and years of service (capped at 7% when age and service

---

do not find it persuasive.

equal 65). That the total <u>accrued benefit</u> under the new plan may not exceed the <u>accrued benefit</u> under the old plan for certain employees for a period of time does not mean that the ADEA is necessarily implicated, since the rate of credits deposited in the accounts is not reduced.[5]

In *Engers I,* the court did not address the legislative intent behind the enactment of subsection (i) but rather looked at legislative history in connection with the adoption of amendments to subsection (f)(2), which occurred after subsection (i) was adopted. That court noted that the House Education & Labor Committee and the Senate Human Resources Committee stated: "in amending [ADEA] section 4(f)(2) it is not the intent of the Committee in any way to alter or modify the requirements of section 4(i) . . . In

---

[5]Further, Plaintiffs' own evidence indicates that the cash balance plan and its conversion does not violate section 4(i) or that the wear away effect is not "because of" age. Plaintiffs have provided evidence from an expert witness that two workers, one aged 55 and one aged 30, with similar salaries ($70,000) and years of service (10 years) in 2002, after the expiration of the five year transition period, would have different wear away periods. Supplemental Declaration of Claude Poulin, Ex. 1 (Docket No. 376-27). This, however, is because the 55 year old worker would have an accrued benefit under the old plan of $59,008 and under the new plan of $40,536 (both present value). The 30 year old worker by contrast, would have an accrued benefit under the old plan of $16,149. Mr. Poulin's evidence is that the 55 year old worker would have a five year wear away period but the 30 year old would have a wear away period of approximately 1.3 years because of the vastly more generous benefits given to the older employee under the old plan. Also, according to Mr. Poulin's calculations, the older worker would have higher accrued benefits than the younger worker under either plan for the next 21 years. Thus, Plaintiffs' evidence demonstrates that an older employee similarly situated to a younger employee in terms of salary and years of service would have a higher opening account balance under the cash balance plan and will receive accrual credits at a higher rate as well, which indicates that the plan complies with section 4(i). *See Jensen v. Solvay Chemicals Inc.*, Case No. 06-cv-273-J (D. Wy. Aug. 8, 2009) at 25; 29 U.S.C. § 623(i)(10)(A) ("A plan shall not be treated as failing to meet the requirements of paragraph (1) if a participant's accrued benefit, as determined as of any date under the terms of the plan, would be equal to or greater than that of any similarly situated, younger individual who is or could be a participant."). However, since neither party addressed subsection (i)(10), I do not rely on this for my decision.

circumstances in which the provision of section 4(i) are inapplicable, claims of discriminatory accruals or pension credits in defined benefit and defined contribution plans shall continue to be resolved under section 4(f)(2) as modified by these amendments." *Engers I* at *3, quoting S. Rep. No. 101-263, at 1525 (1990). The court concluded that this "clearly contemplates that there may be circumstances in which claims of discriminatory pension accruals will be resolved outside of § 4(i)." *Id*. However, since section 4(f)(2) is a safe harbor provision, I understand this statement in the Committee report to mean simply that where a plan does not comply with section 4(i) (thereby making 4(i) "inapplicable"), an employer may still avail itself of the affirmative defenses provided in section 4(f)(2). Accordingly, I find the analysis in *Hurlic* to be more persuasive and will follow that reasoning.

Moreover, the *Engers* court recently resolved any ambiguity it left regarding the interaction of sections 4(a) and 4(i) in a decision following further proceedings, stating plainly that even if the plaintiff asserted a claim under section 4(a) "judgment must be entered in favor of Defendants if the Plan complies with the requirements of ADEA § 4(i)." *Engers v. A T & T*, No. Civ. A. 98-3660(SRC), 2010 WL 2326211 at *3 (D. N.J., June 7, 2010) (*Engers II*). The court in *Engers II* then addressed the issue of the plan's compliance with section 4(i) under a summary judgment standard and concluded, as I did in this case, that the wear away does not violate section 4(i) because the rate of benefit accruals does not cease or reduce because of age. *Id*. at *4 - *5 (*citing Register*).

The Defendants' plan does not violate subsection (i) of the ADEA. Therefore, because compliance with subsection (i) amounts to compliance with the ADEA, I

conclude that Plaintiffs' ADEA claim fails.

Accordingly, it is ordered:

1. The Renewed Motion for Summary Judgment on ADEA Claim (Docket No. 362) is granted.

2. Defendants may have their costs.

DATED at Denver, Colorado, on July 26, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge