IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02686-WDM-MEH

WAYNE TOMLINSON,
ALICE BALLESTEROS, and
GARY MUCKELROY, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

EL PASO CORPORATION, and
EL PASO PENSION PLAN,

    Defendants.

---

## ORDER ON MOTION FOR ATTORNEYS' FEES

Miller, J.

This matter is before me on the Motion for Attorneys' Fees (ECF No. 401), filed by Defendants El Paso Corporation and El Paso Pension Plan (collectively "El Paso"). Plaintiffs oppose the motion. Upon review of the parties' filings, I conclude oral argument is not required. For the reasons that follow, the motion will be denied.

### Background

This case arises out of El Paso Corporation's conversion of its defined benefit pension plan, in particular one based on a final average pay formula to one based on a cash balance formula. Under the old plan, the amount of a retiree's monthly pension was based upon their years of credited service and a final average of salary. Under the amended plan, this amount is based upon the amount of credits employees accumulate throughout their years of service. Each participating employee is given a hypothetical account, and each quarter the employee earns "pay credits" based upon a percentage

of their salary, and "interest credits" based upon the yield of a five-year U.S. Treasury Bond.  *See generally, Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-63 (3d Cir. 2007) (comparing and contrasting traditional defined-contribution plans, traditional defined-benefit plans, and cash balance plans).

During a transition period between January 1, 1997, and December 31, 2001, participating employees accrued benefits under both the new and old plans, and retiring employees could elect whichever option benefitted them the most.  Once this transition period expired retirees could still choose either option, but the old average pay plan was "frozen" at whatever benefits the employee had earned as of December 31, 2001. Benefits would continue to accrue under the new cash balance formula.

Plaintiffs alleged that El Paso set the initial cash balance accounts for older, longer-service employees at levels significantly below the value of their accumulated annuities under the old plan.  One effect of the transition was that for some workers, overall benefits did not grow until the cash balance benefits caught up to and exceeded the "frozen" benefits due under the old formula.  This period is commonly referred to as a "wear away."

Plaintiffs asserted claims under the ADEA, specifically 29 U.S.C. § 623(a) and under the Employee Retirement Income Security Act ("ERISA").  The ERISA claims were as follows: Violation of ERISA sections 203(a) and 204(b)(1)(B) (Claim II); Inadequate notice of amendment in violation of ERISA section 204(h) (Claim IV); Inadequate summary plan descriptions (Claim V).  I dismissed Plaintiffs' third claim, that the cash balance plan violated ERISA, 29 U.S.C. § 1054(b)(1)(H), on March 22, 2007 (ECF No. 108) based on arguments and authorities in a Motion to Dismiss filed by

Defendants. On March 19, 2008, I ruled on a number of then pending motions and dismissed Claim II (ERISA claim regarding anti-backloading rules) and Claim IV (ERISA claim regarding notice of amendment). ECF No. 213. The final ERISA claim (Claim V, concerning the adequacy of the summary plan description) was dismissed on January 21, 2009. ECF No. 311.

El Paso now seeks attorneys' fees under ERISA for fees incurred in defending against Plaintiffs' ERISA claims up until the January 21, 2009 order dismissing Plaintiffs' final ERISA claim. Plaintiffs oppose the motion, arguing that attorneys' fees should not be awarded.

### Standard of Review

Section 502(g)(1) of ERISA provides that in any lawsuit arising out of the statute, a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. 1132(g)(1). The United States Supreme Court recently interpreted this language, concluding that a fee claimant need not be a "prevailing party" to be eligible for a fee award but rather need show only "some degree of success on the merits." *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2156-58 (2010).

Before the decision in *Hardt* issued, the Tenth Circuit applied a five-factor analysis to guide a court's discretion in determining whether to award attorneys' fees, examining: (1) a party's culpability or bad faith; (2) the party's ability to satisfy an award of fees; (3) the deterrence value of an award; (4) the number of plan participants affected by the case or the significance of the impact of the legal question involved; and (5) the relative merits of the parties' positions. *Graham v. Hartford Life & Acc. Ins. Co.*, 501 F.3d 1153, 1162 (10th Cir. 2007) (citing *Gordon v. United States Steel Corp.*, 724

F.2d 106, 108 (10th Cir. 1983)).  El Paso urges that *Hardt* has cast serious doubt on the continued viability of *Gordon* factors and that I should consider only the question of whether El Paso achieved "some degree of success on the merits."

I disagree with El Paso that *Hardt* eliminates the need to refer to some analytical framework to guide my discretion in determining whether an award is appropriate. Indeed, the Court in *Hardt*, referring to an identical five-factor analysis used by the appellate court in that case, stated in a footnote "We do not foreclose the possibility that once a claimant has satisfied this requirement [some degree of success on the merits] a court may consider the five factors . . . in deciding whether to award attorney's fees." 130 S. Ct. at 2158 n. 8.  Given this language, I understand that I must make a threshold determination that a party is eligible for an award of attorneys' fees by deciding whether that party has shown some degree of success on the merits.  Thereafter, I may refer to whatever factors may be appropriate in the exercise of my discretion to determine whether, in light of this success, an award should be made.  Given the venerable history of the five *Gordon* factors identified above, I will refer to them in determining whether to award fees to Defendants.

## Discussion

As to the threshold issue, El Paso clearly achieved some degree of success on the merits.  Indeed, it was wholly vindicated in its defenses to all of Plaintiffs' ERISA claims.  I therefore move on to the analysis of the five factors set forth in *Gordon*.

1. <u>Culpability or bad faith</u>

Plaintiffs' complaint was initially filed on December 29, 2004.  Much of the case law upon which I relied in deciding against Plaintiffs was published in the years

4

thereafter, including *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007) and *Hurlic v. Southern Calif. Gas Co.*, 539 F.3d 1024 (9th Cir. 2008).  The case law concerning the legal implications of pension conversions such as El Paso's was developing at the time Plaintiffs first filed their complaint.  The issues, particularly relating to backloading and accruals, were technical and required a good deal of novel interpretation.  Accordingly, I find no bad faith or culpability in Plaintiffs' asserting these claims at the outset.

However I conclude that Plaintiffs continued to pursue certain claims long after they should have been abandoned.  In particular, Plaintiffs argued that El Paso's notice of amendment to the plan was inadequate because it failed to comply with regulations that did not come into effect until 2002, several years after the effective date of plan amendments.  Similarly, Plaintiffs persisted in pursuing their claim that the summary plan descriptions were inadequate even after discovery revealed that none of the Plaintiffs relied on the summary plan description in any way.  While I do not find that these claims were pursued in bad faith, it appears that at least in some respects Plaintiffs may have unnecessarily protracted this litigation.

    2.    <u>Ability to Satisfy an Award of Fees</u>

Defendants claim that they incurred some $1.5 million in fees in the course of this litigation.  Plaintiffs argue that they cannot satisfy such fees.  Defendants point out that Plaintiffs have pensions from which they might be able to make payment.  In the absence of a particularized showing in this regard, I do not find that this weighs in favor of awarding fees to El Paso.

3. <u>Deterrence</u>

Defendants argue that an award of attorneys' fees is appropriate because it would "deter plan participants and plaintiffs' counsel from asserting weak claims in similar circumstances." El Paso's Mot., ECF No. 401, at 7. Defendants contend that Plaintiffs "attempted to take advantage of El Paso's generosity [in providing a five year transition period] and aggressively litigating this lawsuit" and that Plaintiffs' lawyers have "made a cottage industry out of (unsuccessfully) suing employers for converting their defined benefit pension plans to cash balance plans." *Id.* at 8. Defendants further note that in their depositions Plaintiffs indicated they did not fully understand their claims. *Id.*

Defendants' argument might provide a basis for an award of fees to be paid by Plaintiffs' attorneys, rather than Plaintiffs. However, the statute does not provide this option. Although I ultimately determined El Paso's actions complied with ERISA, Plaintiffs were certainly affected by the changes to the pension plan and they were hardly alone in contesting the legal implications of this type of plan conversion. The remaining arguments go to the conduct of Plaintiffs' attorneys, not Plaintiffs. Given that the law regarding the primary issues in the litigation was undeveloped at the time of filing and has since been clarified, I conclude that deterrence is not a strong basis for requiring Plaintiffs individually to cover Defendants' attorneys' fees.

4. <u>Participants Affected or Significance of Impact of Legal Issues</u>

Defendants argue that this factor weighs in favor of awarding them their fees because Plaintiffs sought to benefit only a "select group" of plan participants who experienced a wear-away as a result of the plan conversion. In response, Plaintiffs contend that this "select group" actually amounted to approximately 53% of the plan's

6

participants, which is a significant number.  Defendants do not dispute this characterization.  Although not addressed by the parties, I also conclude that impact of the legal issues addressed were significant in that questions regarding backloading and accrual rate disparities are common to the legal challenges such pension plan conversions and have implications for other cases.

I conclude, therefore, that this factor is neutral or argues against an award for Defendants.

5.  Relative Merits of Parties' Positions

Finally, with respect to the merits of the parties' positions, I conclude again that, with the exception of Plaintiffs' claims regarding adequacy of notice and summary plan description[1], much of the legal authority bolstering the merits of Defendants' position developed after the lawsuit was filed.  Therefore, even though I ultimately determined that Plaintiffs' claims should not go forward, I cannot conclude that Plaintiffs' assertions were so lacking in merit that they should bear the implicit sanction of an attorneys' fee award for the Defendants.

In conclusion, while there is no doubt that Defendants obtained some success on the merits, I conclude in my discretion there are no compelling reasons to vary from the usual rule that the parties should bear their own costs of litigation.  I therefore decline to

---

[1] While these claims were weak, they also involved little discovery and were relatively simple to argue and resolve.  Therefore, it does not appear that Plaintiffs' persistence in asserting these claims added significantly to the cost of the litigation.

7

award Defendants their attorneys' fees.

Accordingly, it is ordered:

1. Defendants' Motion for Attorneys' Fees (ECF No. 401) is denied.

DATED at Denver, Colorado, on March 30, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge
